THE STATE, EX REL. SPANGLER, *v.*
BOARD OF ELECTIONS OF CUYAHOGA COUNTY.

[Cite as State, ex rel. Spangler, *v.* Bd. of Elections (1983), 7 Ohio St. 3d 20.]

(No. 83-1552—Decided October 20, 1983.)

*Ms. Bessie J. Cassaro,* for relator.

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Thomas P. Gill,* for respondent.

*Per Curiam.* It is well-settled that the decision of a board of elections will not be disturbed absent a showing that the decision constituted an abuse of discretion or clear disregard of applicable law. See *State, ex rel. Flynn,* v. *Bd. of Elections* (1955), 164 Ohio St. 193 [57 O.O. 402], paragraph one of the syllabus; *State, ex rel. Senn,* v. *Bd. of Elections* (1977), 51 Ohio St. 2d 173, 175 [5 O.O.3d 381]; *State, ex rel. Morrison,* v. *Bd. of Elections* (1980), 63 Ohio St. 2d 336, 338-339 [17 O.O.3d 420]. Thus, our review is limited to determining whether respondent's decision that Lambros was a resident of Brook Park constituted an abuse of discretion or clear disregard of applicable law.

R.C. 3503.02 sets forth the rules for determining voter residence and provides, in part:

"(D)  The place where the family of a married man or woman resides shall be considered to be his or her place of residence; except that when the husband and wife have separated and live apart, the place where he or she resides the length of time required to entitle a person to vote shall be considered to be his or her place of residence."

Under the terms of R.C. 3503.02(D), Lambros' residence must be considered as being in the city of Fairview Park where his family resides.

This statute has not been construed strictly under all circumstances. In *State, ex rel. Lakes,* v. *Bd. of Elections* (1954), 161 Ohio St. 341 [53 O.O. 249], this court held that a married man did not lose his voting residence in Mad River Township just because his wife and child moved temporarily to Dayton to obtain schooling for his child who was afflicted with infantile paralysis. Similarly, in *Cox* v. *Union City* (1948), 84 Ohio App. 279 [39 O.O. 412], a married man was not denied a voting residence in Union City, Ohio because his wife temporarily lived in Union City, Indiana due to a housing shortage, having the intention of joining her husband as soon as accommodations could be located.

The exceptions defined in these cases, however, do not support respondent's decision herein. In both of these cases, the families at issue were residing elsewhere on a temporary basis, with the intention of returning. In the case at bar, there was no evidence that the residence of Lambros' family in Fairview Park was temporary or that they ever intended to live in the city of Brook Park.

All the evidence relevant to a determination under R.C. 3503.02(D) and cases construing that section support the conclusion that Lambros is a resi-

dent of the city of Fairview Park. We therefore conclude that respondent's decision dismissing relator's protest constituted an abuse of discretion and was entered without regard to R.C. 3503.02(D).

Accordingly, we hereby allow a writ of mandamus to compel respondent to strike the name of Arthur P. Lambros from the ballot for the municipal election to be held in the city of Book Park on November 8, 1983.

*Writ allowed.*

CELEBREZZE, C.J., SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

W. BROWN, LOCHER and HOLMES, JJ., dissent.

WILLIAM B. BROWN, J., dissenting. I would deny the writ, thus allowing the citizens of Brook Park to decide who their law director should be rather than permitting this court to make that decision for them.

In compelling the board of elections to strike the name of Arthur P. Lambros from the ballot, the majority has failed to set forth fully the statutorily created test for determining voter residency, has ignored critical evidence in the record supporting the board's conclusion, and has disregarded established case law which limits this court's review of a board's decision.

The majority states that "[u]nder the terms of R.C. 3503.02(D), Lambros' residence must be considered as being in the city of Fairview Park where his family resides." However, subsection (A) of R.C. 3503.02 also sets forth a rule for determining voter residency and provides as follows:

"That place shall be considered the residence of a person in which his habitation is fixed and to which, whenever he is absent, he has the *intention* of returning." (Emphasis added.)

In the case at bar, no evidence was presented to refute Lambros' assertion that he *intended* to make Brook Park his permanent residence. Furthermore, I disagree with the majority's assessment that all the evidence supports the conclusion that Lambros is a resident of the city of Fairview Park. Specifically, the record contains evidence that Lambros and his wife maintain separate residences due to the demands of their respective occupations and the requirements of their children's schooling.[3]

In reviewing a determination of a board of elections, this court may not overturn a board's decision simply because it would have found differently. Rather, it is well-established that this court will only overturn a board's decision if that decision is "* * * tainted with fraud or corruption or resulted from an abuse of discretion or a clear disregard of the applicable law." *State,*

---

[3] Lambros' minor children attend school in the city of Rocky River which is adjacent to Fairview Park and his wife conducts an exercise business in the city of Fairview Park. Lambros' law offices are located in Brook Park.

*ex rel. Morrison,* v. *Bd. of Elections* (1980), 63 Ohio St. 2d 336, 339 [17 O.O.3d 420]. Based on this record, I cannot find that respondent abused its discretion or acted in clear disregard of applicable law so as to justify the issuance of the extraordinary relief sought herein.

In granting this writ today, this court has failed to remain mindful of the limitations on its power to intervene in the election of public officials. The right to vote has its source in and is guaranteed by the Constitutions of Ohio and of the United States. The survival of our system of government requires that proper respect be given to the will of the people as expressed at the ballot box.