## RIBARIN, Appellant, v. KESSLER, Appellee.

Ohio Appeals, First District, Hamilton County.

No. 6642.   Decided June 24, 1946.

Robert P. Moore, Cincinnati, and Robert F. Dreidame, Cincinnati, for appellant.

Leo J. Brumleve, Jr., Cincinnati, for appellee.

## OPINION

PER CURIAM:

The plaintiff, suffering from an infected tooth called upon the defendant, a dentist, who, using novocain as an anesthetic, pulled same. The infection indicated by the swelling of a gland, spread rapidly the following day, causing serious illness.

The plaintiff filed a petition against the defendant, alleging malpractice, in the administration of the anesthetic and subsequent treatment.

The plaintiff was, at the close of the evidence permitted to amend her petition, specifically alleging that the defendant was negligent, in that he used novocain by infiltration, where the same could not be used with safety to plaintiff.

The answer was, in effect, a general denial.

Trial resulted in a verdict for defendant. Motion for new trial was filed and overruled and judgment entered for defendant. Notice of appeal on questions of law was filed to this Court.

The Court in its general charge attempted to state the issues, but the charge developed into a general comment on the evidence and the controversy between the several witnesses testifying. In many places, the Court stated its conclusions on what was common practice among dentists. The issues in a case are made up by the pleadings, not mere conflicts in the testimony of witnesses. The Court is required to state the issues to the jury.

The fifth paragraph of the syllabus in the case of **Simko v Miller, 133 Oh St 345**, is:

"In submitting a case to the jury, it is the duty of the court to separately and definitely state to the jury the issues of fact made by the pleadings, accompanied by such instructions as to each issue as the nature of the case may require." **(Baltimore & Ohio Rd. Co. v Lockwood, 72 Oh St 586**, approved and followed.)

The issues in a case are presented by the pleadings. **Secs. 11,377** and **11,378, GC.**

See: **Gerend v City of Akron, 137 Oh St 527, 531; Kelley v Armstrong, 102 Oh St 478; Rairoad Co. v Hutchins, 37 Oh St 282.**

In **Morgan v State, 48 Oh St 371,** the fifth paragraph of the syllabus is:

"In the trial of a jury case the judge is not required to sum up the evidence. It is not improper to do so providing it is fairly done, and all the material evidence on both sides fairly presented. But it is improper and erroneous for the judge to single out isolated parts of the testimony and instruct as to the law arising on the facts which such testimony tends to prove, or to give undue prominence to some portions of the testimony, and entirely pass over other portions equally important, or give the same but slight attention."

The claim of the plaintiff was that the improper injection of novocain into the infected area about the tooth caused the present infection to spread and caused her resulting illness. At one point in the general charge, the Court said:

"Now, Dr. Kessler by answer filed in this case and otherwise denies that there was anything wrong or negligent in the way he treated plaintiff's case. Dr. Kessler did use novocain in extracting plaintiff's tooth, but he says that that was all right, that novocain is in general use and recognized as a proper anesthetic in extracting teeth by dentists of this city and of this state. Dr. Kessler says that in fact novocain is preferred generally by dentists over other forms of anesthesia in the extraction of teeth and all of the expert witnesses say, and in fact it is a matter of common knowledge, you and I and everybody knows that novocain is in common use and generally recognized by dentists as a proper anesthesia in the extraction of teeth, but plaintiff says it was wrong, negligence, for Dr. Kessler to have used novocain and not gas or some other anesthetic under the circumstances of her case, there being as she says infection in and around the tooth extracted. Plaintiff's tooth had to be extracted. The purpose of an anesthetic is to kill the pain from the extraction of the tooth. The novocain injected by Dr. Kessler seems to have done that, for plaintiff complains of no pain from the extraction

**132**

of her tooth. One of the expert witnesses in this case says that he would have preferred to use gas in the extraction of plaintiff's tooth. Well, that was his privilege, but it is no proof that Dr. Kessler was wrong or negligent in using novocain. Quite naturally, if there are several types of anesthesia, dentists would have their preference as to the type that they would use in particular cases. There are several forms or types of anesthesia recognized as proper and in common use by dentists in 'this city in the extraction of infected teeth. The question is, and that's the question for you to determine, was novocain one of these several forms of anesthesia in common use by dentists in this city in the extraction of teeth. If so, there was nothing wrong nor was Dr. Kessler guilty of any negligence in using novocain as an anesthesia in the extraction of plaintiff's tooth, because that was then in conformity to the present-day practice and science of dentistry in this city. But if novocain was not one of the types of anesthesia recognized as proper to be used in the extraction of an infected tooth such as plaintiff alleges she had, then Dr. Kessler was wrong and guilty of negligence in using it as an anesthesia in the extraction of plaintiff's tooth, and if Dr. Kessler failed to exercise the skill and care in the use of novocain in the extraction of plaintiff's tooth that ordinarily prudent dentists are accustomed to exercise under the same or similar circumstances then he would be guilty of negligence."

It would seem apparent that such expressions by the Court must have had a pronounced effect in producing a verdict for the defendant, and was erroneous therefore, to the prejudice of appellant.

In **39 O. Jur., pages 1003 and 1004,** it is stated:

"The trial judge is not required to sum up the evidence, although it is not an invasion of the province of the jury for him to do so, and he may recite what is claimed by the parties to be proved, provided this is fairly done and nothing is said which will unduly emphasize items of evidence on one side, eclipse equally important items of evidence on the other, attach influence or importance to particular matters favorable to one or the other of the parties, indicate to the jury the view of the court on a particular issue, etc. Any review of

the evidence by the judge should be scrupulously accurate as to matters of substance. Thus, the court should not single out isolated parts of the testimony, or isolated facts upon which a party relies, and instruct as to the law arising on such facts or testimony. And a statement of the evidence by the court argumentatively, so as to give the jury the manifest conclusion of the court as to the facts submitted to their determination, is uniformly condemned as improper. The importance of a correct statement of the testimony where the court undertakes to state the same in the court of its charge cannot be exaggerated, for juries are alert to catch the least note from the presiding judge as to his view on important issues."

It is also apparent that the rules laid down in **Ault v Hall, 119 Oh St 422,** were ignored by the Court in the general charge, the special charge of plaintiff refused and special charge of defendant, given. In the syllabus in Ault v Hall, it is stated:

"2. In an action for negligence, conformity to custom or usage is a matter proper to be submitted to the jury for its consideration in determining whether or not ordinary care has been exercised.

"3. Customary methods or conduct do not furnish a test which is conclusive or controlling on the question of negligence or fix a standard by which negligence is to be gauged, but conformity thereto is a circumstance to be weighed and considered with other circumstances in determining whether or not ordinary care has been exercised.

"4. Methods employed in any trade, business or profession, however long continued, cannot avail to establish as safe in law that which is dangerous in fact."

The Court gave defendant's special charge No. 7, which is as follows:

"The Court charges you that, if the treatment adopted by the defendant is approved by a substantial number of dentists exercising the average degree of skill, care and diligence, by members of that profession practicing in the same or similar communities or localities, in the light of the present state of dental science, then the plaintiff cannot recover and your verdict must be for the defendant."

This charge does not conform to the rule pronounced in Ault v. Hall. The same error was inherent in the defendant's special charge No. 2.

Defendant's special charge No. 1 is misleading and should not have been given.

On the other hand, plaintiff's special charge No. 1 and No. 3 stated correct rules of law applicable to the facts in the case and should have been given. The error in refusing them was prejudicial to the rights of the plaintiff.

The Court gave defendant's special charge No. 4, as follows:

"The Court charges you that in this case, as in every action for damages for malpractice, negligence is not presumed from the mere fact that the plaintiff's condition became more aggravated after treatment. To the contrary, a presumption is always indulged in favor of the conclusion that the defendant exercised due care and skill in his treatment of the plaintiff."

While this statement is not so prejudicially erroneous as in itself to require a reversal, it does not state the rule correctly.

The proper statement is set out in the first paragraph of the syllabus in **Martin v Heintz, 126 Oh St 227:**

"There is no presumption of negligence, except such as arises from facts proven. There is a presumption of freedom from negligence, and such presumption stands until rebutted by evidence."

There is **no** presumption.

See, also: **Troop A Riding Academy v Miller, 127 Oh St 545,** at **549; Pitt v Nichols, 138 Oh St 555.**

There is authority for the statement of a presumption, and the charge cannot be said to be prejudicially erroneous. **29 O. Jur. p. 625.**

However, Judge Marshal in **Ault v Hall, supra,** at **page 428** of the opinion stated the principle involved:

"One of the assignments of error in the instant case is that the court erred in imposing too great a burden upon the plaintiff in establishing her case in charging a special instruction requested by the defendant: 'The court says to you

as a matter of law that the presumption is in favor of the defendant in this case, namely, that Dr. Hall, at the time complained of, was in the exercise of ordinary care in the premises.' Similar expressions are so often employed by the trial courts of this state that we would not reverse this judgment upon that ground alone, and yet it must be said that it was not an accurate statement of the proposition. It is more accurate to instruct the jury that no presumption of negligence is indulged from the mere fact of injury, but that the burden of proof is on the plaintiff to show by the preponderance of the evidence that she was injured by the negligence of the defendant and that such negligence occasioned her damage. Of course this very general statement would not apply where the doctrine of res ipsa loquitur is involved, or, in case of common carriers, who contract for the safe carriage of persons and property, and perhaps in other instances."

It is also the claim of plaintiff that the Court improperly excluded the "bedside notes and physician's statements" concerning the plaintiff, while an inmate of a private charitable hospital.

In the record appears:

"Q. Doctor, I will hand you this booklet form with a number of pages and tell me whether or not you can identify this record.

A. This is the record of Mrs. Ribarin.

Q. In what hospital?

A. In the Jewish Hospital.

MR. BRUMLEVE: We are admitting all that, your Honor please, that this is the record of the case of Mrs. Ribarin at the hospital; that it is kept in the usual course of their business; that it is a private and charitable hospital; and that this was under the supervision of Dr. Goldman and Dr. Goldman's name is on it. So there is no doubt about that."

The Court refused the entire record and permitted certain portions to be admitted. The Court excluded certain notes made by physicians and nurses. It would appear that such excluded evidence (Exhibit 3) should have been admitted under the terms of §12102-23 GC, and the Court committed error, prejudicial to the plaintiff in excluding such record. **Weis v Weis, et al., 76 Oh Ap 483.**

The defendant claims that the jury should have been instructed to return a verdict for him. This claim cannot be sustained, in the face of substantial evidence which would have sustained a verdict for the plaintiff.

For error in refusing to give plaintiff's special charges Nos. 1 and 3, and giving defendant's special charge No. 7 and No. 2, and for error in the general charge, and the exclusion of hospital records, the judgment of the Court of Common Pleas is reversed and the case remanded for a new trial.

HILDEBRANT, PJ, and ROSS, J, concur in opinion and judgment.

MATTHEWS, J, concurring:

I am in accord with my associates in concuding that there is prejudicial error, requiring a reversal of the judgment. This error consists in the giving of special charge No. 7, requested by defendant, and the refusal to give special charges No. 1 and No. 3, requested by plaintiff, and in the exclusion of the hospital records, offered by the plaintiff.