[Cite as *State ex rel. Baryak v. Trumbull Cty. Bd. of Elections*, 2019-Ohio-4655.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO ex rel. JOHN BARYAK, | : | **PER CURIAM OPINION** |
| Relator, | : | |
| - vs - | : | **CASE NO. 2019-T-0040** |
| TRUMBULL COUNTY BOARD OF ELECTIONS, | : | |
| Respondent. | : | |

Original Action for Writ of Prohibition

Judgment:  Petition dismissed.

*Gregory A. Beck* and *Tonya J. Rogers,* Baker, Dublikar, Beck, Wiley and Mathews, 400 South Main Street, North Canton, Ohio 44720. (For Relator).

*Dennis Watkins,* Trumbull County Prosecutor, and *William J. Danso*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, Ohio 44481-1092. (For Respondent).


PER CURIAM.

{¶1}    Relator, John Baryak, seeks a writ of prohibition against respondent, the Trumbull County Board of Elections, to prevent a recall election on November 5, 2019. Respondent moves to dismiss the amended petition arguing the allegations fail to demonstrate that it lacks jurisdiction to deem the recall petition proper and conduct the election.  The motion to dismiss is granted.

{¶2}    Relator is a resident of Newton Falls, Ohio, a charter city, and serves as

its 2nd Ward Councilman. Phillip Beer is also a resident and city councilman. On October 15, 2018, Beer filed a petition with respondent seeking recall and removal of relator from office. The recall petition has 27 valid signatures of 2nd Ward residents and alleges that relator has failed to fairly and properly conduct city business.

{¶3} At the time the petition was filed, the Newton Falls Charter stated that Ohio statutory law governs recalls. Pursuant to R.C. 705.92(A), a recall petition must be signed by qualified electors equal in number to at least 15 percent of the total votes cast at the most recent regular municipal election. It also requires the petition to be submitted to the county board of elections.

{¶4} On November 6, 2018, the Newton Falls electorate passed an amendment to its city charter governing recall. As amended, Section 4, Article VII of the charter states that a recall petition must be submitted to the Clerk of Council, who then must determine whether the petition satisfies recall requirements. Section 4 further states that a recall petition for a ward councilman must be signed by qualified electors equal in number to at least 15 percent of the total votes cast at the most recent regular municipal election.

{¶5} In February 2019, after the charter amendment became effective, relator filed a protest with respondent, challenging the validity of the recall petition against him. Relator asserted that respondent lacked jurisdiction to determine the validity of the petition in light of the recent amendments. In the alternative, relator argued that if R.C. 705.92 applies, the recall petition lacks sufficient signatures to satisfy the 15 percent requirement because the recall petition needed signatures of at least 15 percent of all citywide voters who participated in the most recent regular municipal election, not 15

2

percent of Ward 2 voters.

{¶6} After conducting an evidentiary hearing, respondent issued a written decision denying relator's protest in part. Respondent concluded that the charter amendment has no effect on its jurisdiction over the recall petition and that the 27 valid signatures on the petition satisfies the 15 percent requirement. The only aspect of relator's protest granted by respondent was his contention that it was too late to place the recall issue on the May 2019 primary election ballot. Therefore, respondent ordered the recall to be on the November 2019 general election ballot.

{¶7} Initially, relator challenged respondent's decision through an administrative appeal to the Trumbull County Court of Common Pleas. However, the common pleas court granted respondent's motion to dismiss. Instead of pursuing a direct appeal, relator filed this action for a writ of prohibition.

{¶8} As the basis of his amended prohibition petition, relator re-asserts the primary arguments he raised in his protest to the recall. He contends that the recall election cannot proceed because: (1) respondent no longer has jurisdiction over the recall petition due to the amendment that now grants such authority to the Clerk of Council; and (2) respondent misapplied R.C. 705.92(A) in finding the recall petition has enough valid signatures to satisfy the 15 percent requirement. In moving to dismiss under Civ.R. 12(B)(6), respondent does not challenge the factual allegations in the prohibition petition. Rather, respondent maintains that relator cannot establish a lack of jurisdiction or error in its conclusions as a matter of law. We agree.

{¶9} "As a general proposition, * * * a prohibition claim can be subject to dismissal under Civ.R. 12(B)(6) when the nature of the relator's allegations are such

3

that, even if the allegations are presumed true and interpreted in a manner most favorable to him, it would still be beyond doubt that he will not be able to prove a set of facts entitling him to the writ." *State ex rel. Feathers v. Gansheimer*, 11th Dist. Ashtabula No. 2006-A-0038, 2007-Ohio-2858, ¶ 6. *Accord. State ex rel. Conkle v. Sadler*, 99 Ohio St.3d 402, 2003-Ohio-4124, 792 N.E.2d 1116, ¶ 8.

{¶10} When a writ of prohibition is sought in regard to a decision made by a county board of elections, the writ will not lie unless the relator can establish "that the board has exercised or is about to exercise quasi-judicial power, that the exercise of that power is unauthorized by law, and that denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law." *State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, ¶ 14.

{¶11} The first and third elements are relatively straightforward. Regarding the first element, a county board of elections exercises quasi-judicial power when it holds a hearing under R.C. 3501.39 and denies a relator's protest. *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 28. Even when the exercise of quasi-judicial authority has already occurred, the writ may still be granted to stop the placement of a name or issue on the ballot, so long as the election has not taken place. *Id.*

{¶12} As to the third element for a writ of prohibition, the relator is deemed to have no adequate legal remedy when the proximity of the election will take away his ability to pursue the appellate process in relation to other forms of relief, such as an injunction. *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections*, 72 Ohio St.3d 289,

4

292, 649 N.E.2d 1205 (1995).

{¶13} Here, the allegations in relator's petition are sufficient to satisfy the first and third elements of a prohibition claim. As noted, relator alleges that respondent denied his protest in part after holding an evidentiary hearing; hence, respondent has exercised quasi-judicial power in ordering that the recall be placed on the November 2019 general election ballot. Nevertheless, even though that quasi-judicial decision has been issued, relief can still be afforded by prohibiting respondent from placing the recall on the ballot. In addition, since relator's administrative appeal was not decided until five months before the November 2019 general election, an appeal does not provide adequate remedy.

{¶14} Resolution therefore turns on whether relator's factual allegations when presumed true and construed in a manner most favorable to him establish that respondent has exercised power not authorized by law.

{¶15} "'In extraordinary actions like prohibition challenging the quasi-judicial decision of a board of elections, "the applicable standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions."' *State ex rel. Baur v. Medina Cty. Bd. of Elections* (2000), 90 Ohio St.3d 165, 166, 736 N.E.2d 1, quoting *State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections* (1999), 87 Ohio St.3d 132, 135-136, 717 N.E.2d 1091. An abuse of discretion evidences an attitude that is unreasonable, arbitrary, or unconscionable. *State ex rel. Miller v. Cuyahoga Cty. Bd. of Elections*, 103 Ohio St.3d 477, 2004-Ohio-5532, 817 N.E.2d 1, ¶ 16." (Footnote omitted.) *McCord*, 2005-Ohio-4758, at ¶ 30.

5

{¶16} Relator's petition does not assert that respondent engaged in fraud or corruption in denying his protest to the recall petition. Similarly, his claim does not allege that respondent abused its discretion. Instead, relator contends that respondent misapplied, and thus disregarded, the legal provisions for determining the validity of the recall petition against him.

{¶17} First, relator argues that respondent erred in not applying the amendment to the Newton Falls City Charter which was approved by the electorate on November 6, 2018. As stated, the prior charter provision states that Ohio law applies when seeking to recall a city officer. However, the amended provision provides a different procedure, including filing with the Clerk of Council. Relator maintains that since the recall amendment was approved before respondent held the hearing on his protest, it governs and respondent was required to apply the amended provision.

{¶18} In addressing this argument in its decision, respondent concluded that it had jurisdiction to determine the validity of the recall petition because the pre-amendment version of the Newton Falls City Charter governs because the amended recall provision does not retroactively apply.

{¶19} The general constitutional prohibition against retroactive enforcement of new laws is applicable to municipal charter amendments. *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 72 Ohio St.3d 69, 73, 647 N.E.2d 769 (1995). The first step in any retroactivity analysis is to determine whether the new enactment was intended to be applied retrospectively. *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 522 N.E.2d 489 (1988), paragraph one of the syllabus. R.C. 1.48 provides that "[a] statute is presumed to be prospective in its operation unless expressly made

6

retrospective."

{¶20} Here, the amended recall provision does not expressly state that it applies retroactively. It therefore applies prospectively.

{¶21} While acknowledging that the recall petition against him was filed before the amended recall provision was approved, relator contends that respondent was obligated to follow the amended provision in its February 2019 hearing on his protest. He also argues that such an application of the amended provision would not violate the prohibition against retroactive application since the hearing occurred after the amendment became effective. However, once a claim or petition is pending for consideration, the date of the hearing is not controlling for determining retroactively. Instead, the date of filing controls. *See Sanden v. City of Cincinnati*, 174 Ohio App.3d 280, 2007-Ohio-6866, 881 N.E.2d 919, ¶ 12-13 (1st Dist.) (amendment to a workers' compensation statute cannot be applied retroactively to a police officer's claim that was filed before the effective date of the amendment).

{¶22} The amended charter provision applies prospectively to recall petitions filed after its effective date. Since Beer's petition was filed before the amendment became effective, the prior charter provision governs. And because the prior provision states that Ohio law governs and R.C. 705.92 grants a county board of elections the authority to review recall petitions, respondent did not exceed its jurisdiction in holding an evidentiary hearing and rendering a final decision on relator's protest.

{¶23} Relator also contends that respondent misapplied R.C. 705.92(A). He argues that Beer's recall required valid signatures of at least 15 percent of the voters who participated in the most recent regular municipal election *citywide,* not 15 percent

7

of the votes from the 2nd Ward.

{¶24} R.C. 705.92 governs removal from office by recall and states:

{¶25} "Notwithstanding Section 38 of Article II, Ohio Constitution, or any other provisions in the Revised Code to the contrary, any elective officer of a municipal corporation may be removed from office by the qualified voters of such municipal corporation. The procedure to effect such removal shall be:

{¶26} "(A) A petition signed by qualified electors equal in number to at least fifteen per cent of the total votes cast at the most recent regular municipal election, and demanding the election of a successor to the person sought to be removed, shall be filed with the board of elections. A petition shall contain the required number of valid signatures upon submission to the board of elections. * * * The form, sufficiency, and regularity of any such petition shall be determined as provided in the general elections laws."

{¶27} Under the unambiguous language of R.C. 705.92(A), a recall petition requires signature of "qualified electors." The words "qualified electors" are also used in R.C. 3501.38, which delineates general requirements that all election petitions must meet, and it states:

{¶28} "All declarations of candidacy, nominating petitions, or other petitions presented to or filed with the secretary of state or a board of elections or with any other public office for the purpose of becoming a candidate for any nomination or office or for the holding of an election on any issue shall, in addition to meeting the other specific requirements prescribed in the sections of the Revised Code relating to them, be governed by the following rules:

8

{¶29} "(A) *Only electors qualified to vote on the candidacy or issue which is the subject of the petition shall sign a petition.* Each signer shall be a registered elector pursuant to section 3503.01 of the Revised Code. The facts of qualification shall be determined as of the date when the petition is filed." (Emphasis added).

{¶30} Under the unambiguous language of R.C. 3501.38(A), for a person to be a qualified elector, he or she must be a registered voter. As that statute indicates, the registered voter requirements are set forth in R.C. 3503.01(A):

{¶31} "Every citizen of the United States who is the age of eighteen years or over and who has been a resident of the state thirty days immediately preceding the election at which the citizen offers to vote, *is a resident of the county and precinct in which the citizen offers to vote*, and has been registered to vote for thirty days, has the qualifications of an elector and *may vote at all elections in the precinct in which the citizen resides*." (Emphasis added).

{¶32} A "precinct" is a district inside a county, established by the county board of elections, within which all qualified electors can vote at the same polling place. R.C. 3501.01(Q). As a result, for voting purposes, a ward within a municipality is comprised of one or more precincts.

{¶33} Thus, in light of R.C. 705.92(A), 3501.38(A), and 3503.01(A), a person is deemed a "qualified elector" when he or she is registered to vote in the county and *precinct* in which he or she resides. For purposes of R.C. 705.92(A), therefore, that a person is a resident of a municipality does not make him or her "qualified" to sign a recall petition for a ward councilman. Rather, a recall petition may only be signed by those persons who are registered to vote within that councilman's ward. To this extent,

9

only those persons who are qualified to vote for a candidate as ward councilman can properly sign a recall petition after he has taken office.

{¶34} Given that only qualified electors of Ward 2 are eligible to sign a recall petition, Beer was required to obtain the signatures of 15 percent of the total votes cast in the 2nd Ward at the most recent regular election. Requiring Beer to obtain 15 percent of all voters citywide, when the pool of qualified electors is limited to the residents of Ward 2, would lead to an absurd result.

{¶35} In his amended prohibition petition, relator admits that 165 votes were cast in the city's most recent regular election. Given that Beer's recall petition had 27 valid signatures, an amount greater than 15 percent of 165, respondent properly found the petition was proper. Thus, placement of the recall issue on the November 2019 ballot is warranted.

{¶36} As a separate contention, relator asserts that the question of recall is moot because he is running for re-election on the November 2019 ballot and the results of the recall election would have no effect on his eligibility to serve the new term. Yet, relator acknowledges that if he is elected but loses the recall, there would be a two-month period during which he would not serve as councilman. Accordingly, the recall election is not moot.

{¶37} Construing relator's allegations in a manner most favorable to him, he can prove no set of facts entitling him to a writ of prohibition. Therefore, respondent's motion to dismiss is granted. Relator's amended prohibition petition is hereby dismissed in its entirety.

10

THOMAS R. WRIGHT, P.J., CYNTHIA WESTCOTT RICE, J., TIMOTHY P. CANNON, J., concur.